UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CITADEL RECOVERY SERVICES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-914** |
| **T.J. SUTTON ENTERPRISES, LLC et al.** | **SECTION "G"(4)** |

## ORDER AND REASONS

This litigation is an interpleader action arising from construction contracts to repair homes in the U.S. Virgin Islands affected by Hurricanes Irma and Maria in 2017 ("the Project"). Before the Court is Intervenor Jerry Baptiste's ("Baptiste") Motion for Partial Summary Judgment.[1] Baptiste seeks summary judgment regarding the liability of Defendant T.J. Sutton Enterprises, LLC ("TJ Sutton").[2] Baptiste contends that there was a binding oral agreement between him and TJ Sutton wherein TJ Sutton agreed to pay for all of Baptiste's out-of-pocket expenses, per diems, and administrative time related to the project.[3] In opposition, TJ Sutton denies that such an agreement was made with Baptiste.[4] For the reasons stated herein, the Court finds that genuine issues of material fact remain in dispute as to whether TJ Sutton was the party responsible for paying Baptiste for work related to the project. Having considered the motion, the opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 105.

[2] *Id.*

[3] *Id.*

[4] Rec. Doc. 108.

1

## I. Background

In 2017, the United States Virgin Islands suffered catastrophic damage from Hurricanes Irma and Maria.[5] Interpleader Plaintiff-Stakeholder Citadel Recovery Services, LLC ("Citadel") alleges, as part of the disaster recovery efforts, the Virgin Islands Housing Finance Authority ("VIHFA") contracted with prime contractor AECOM Caribe, LLP ("AECOM") under the Emergency Home Repair Virgin Islands program, a program funded by the Federal Emergency Management Agency (the "FEMA program").[6] Citadel contends that AECOM subsequently contracted with Citadel (the "Master Subcontract") as a subcontractor to help provide construction services in the recovery efforts.[7]

To satisfy its obligations to AECOM under the Master Subcontract, Citadel contracted with TJ Sutton on February 25, 2019 (the "Subcontract") to provide labor and materials to several construction projects.[8] Citadel contends that it "had not received any payments under [the Master Subcontract] for its work on the [disaster recovery] program" at the time the Subcontract was executed.[9] Citadel alleges that the Subcontract contained "clear and unambiguous 'paid when paid' provisions" in which Citadel promised to pay TJ Sutton after AECOM remitted payment to Citadel.[10] Citadel avers that these "paid when paid" provisions prohibited TJ Sutton from filing liens on repaired properties in the Virgin Islands to recover payment for its work on the FEMA

---

[5] Rec. Doc. 1 at 4.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4–5.

[9] *Id.* at 5.

[10] *Id.* (emphasis omitted).

program.[11] Citadel asserts that it secured Subcontract performance bonds in the amount of ten million dollars ($10,000,000.00) with Interpleader Defendant-Claimant Travelers Casualty and Surety Company of America ("Travelers") "to ensure payment to all subcontractors."[12]

On April 6, 2022, Citadel filed a "Complaint of Interpleader & Declaratory Judgment" and sought leave to deposit $833,504.33 into the registry of the Court.[13] This amount consisted of two payments from AECOM to Citadel for work performed under the Master Subcontract: (1) a March 16, 2021 payment in the amount of $103,233.54 for labor and/or materials supplied by TJ Sutton; and (2) a $730,270.79 payment from AECOM to Citadel for housing and travel expenses.[14]

In the Interpleader Complaint, Citadel named TJ Sutton, Gerald Toliver d/b/a Blue Water Staffing Company ("Blue Water"), Morgado Rentals, Inc. ("Morgado"), Smart Freight Funding, LLC ("Smart Freight"), and Travelers as Defendant-Claimants.[15] "Because there is no privity of contract between [Citadel] and [TJ] Sutton's subcontractors and materialmen," Citadel alleged that it was "in great doubt as to which defendants are entitled to the property subject to this interpleader action."[16] Citadel stated that it could not "determine which claims are valid without exposing itself to potential double litigation and further erroneous and unlawful liens."[17] On February 13, 2023,

---

[11] *Id.* (emphasis omitted).

[12] *Citadel Recovery Services LLC v. T.J. Sutton Enterprises, LLC*, Case No. 19-12271, Rec. Doc. 1 at 8.

[13] Rec. Doc. 1 at 1, 3.

[14] *Id.* at 5–6.

[15] *Id.* at 2–3.

[16] *Id.* at 7.

[17] *Id.*

the Court granted a joint motion to dismiss Smart Freight.[18] Originally only Citadel, Travelers, and TJ Sutton claimed a stake in the interpleader funds.

Thereafter, TJ Sutton filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction or Alternatively Motion to Transfer."[19] TJ Sutton argued that this Court lacked subject matter jurisdiction over this action, due to Citadel's failure to deposit the full amount in controversy in the registry of the Court.[20] On January 17, 2023, the Court issued an Order finding that it lacked jurisdiction over the interpleader action because the amount deposited in the Court's registry was not sufficient to protect the rights of the claimants.[21] However, in line with prior jurisprudence, the Court ordered Citadel to either deposit a sum of $917,926.20 in the Court's registry or post a bond in that amount to cure the jurisdictional defect.[22] On February 9, 2023, Citadel deposited $417,926.20 into the registry of the Court and posted a bond for the remaining $500,000.[23]

On June 19, 2023, Jerry Baptiste ("Baptiste") filed a Motion for Leave to Intervene,[24] pursuant to Rule 24(a) and/or Rule 24(b) of the Federal Rules of Civil Procedure, alleging that he has an interest in the subject matter of the pending suit, and disposition of the suit may impair that interest.[25] Baptiste contends that he is owed over $700,000 for services performed for the benefit of Citadel's Master Subcontract, including administrative fees, unpaid salaries, and expenses

---

[18] Rec. Doc. 46.

[19] Rec. Doc. 15.

[20] Rec. Doc. 15-1 at 8–9.

[21] Rec. Doc. 39.

[22] *Id.*

[23] Rec. Doc. 41.

[24] Rec. Doc. 52.

[25] Rec. Doc. 52-1 at 1.

reimbursements pursuant to a sub-sub-contract between Baptiste and Blue Water.[26] Citadel, Travelers, and TJ Sutton did not oppose Baptiste's intervention.[27] Therefore, the motion was granted as unopposed on July 5, 2023.[28] Baptiste brought a counterclaim against Citadel for breach of contract, and a crossclaim against Blue Water for breach of contract.[29]

On September 6, 2023, Baptiste filed an amended crossclaim against TJ Sutton and Gerald Toliver d/b/a Blue Water Staffing Company alleging breach of contract against both parties.[30] On October 3, 2023, Baptiste filed a brief opposing partial disbursement of interpled funds wherein he states that he is owed $307,000.[31]

On October 17, 2023, TJ Sutton and Citadel filed a joint motion for interpleader disbursement wherein the parties stated that they had compromised their claims against each other.[32] The parties stated that there are no other pending claims to the interpled funds except Baptiste's counter and crossclaims.[33] The parties stated that the requested partial disbursement would leave a total sum of $417,926.20, which far exceeds the amount that Baptiste claims is necessary to protect his interests.[34] Baptiste did not file an opposition to the motion. On November

---

[26] *Id.* at 2.

[27] Rec. Doc. 53.

[28] Rec. Doc. 56.

[29] Rec. Doc. 52-4 at 7–10.

[30] Rec. Doc. 77.

[31] Rec. Doc. 84.

[32] Rec. Doc. 85.

[33] *Id.*

[34] Rec. Doc. 85-1 at 3.

8, 2023, this Court entered an Order granting the motion, the amount of $833,504.33 was disbursed to TJ Sutton and the $500,000 bond was returned to Travelers.[35]

On May 13, 2024, Baptiste filed the instant motion for partial summary judgment.[36] On June 4, 2024, TJ Sutton filed an opposition to the motion.[37]

## II. Parties' Arguments

### A. *Baptiste's Arguments in Support of the Motion*

Baptiste moves for summary judgment establishing that TJ Sutton is liable to Baptiste.[38] Baptiste contends that on March 2, 2019, a meeting was held with Baptiste, TJ Sutton, Citadel, and Gerald Toliver of Blue Water.[39] At said meeting, Baptiste asserts that Thomas Sutton, the owner of TJ Sutton, verbally agreed to pay Baptiste for out-of-pocket expenses, per diems, and administrative time related to the project.[40] Baptiste states that TJ Sutton has now refused to pay him.[41]

Baptiste contends that text messages from Citadel's counsel evidence that said meeting occurred.[42] Baptiste also relies on requests for admissions referencing the meeting, which were propounded on Citadel but were not responded or objected to.[43] Baptiste argues that federal courts

---

[35] Rec. Doc. 89.

[36] Rec. Doc. 105.

[37] Rec. Doc. 108.

[38] Rec. Doc. 105.

[39] Rec. Doc. 105-1 at 1.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 2.

[43] *Id.*

6

have relied on default admissions to support a grant of summary judgment.[44] Baptiste avers that this Court may rely on the deemed-admitted requests for admission.[45] Baptiste contends that Citadel's failure to respond to the requests for admission and Citadel's confirmatory texts and emails establish that TJ Sutton is legally obligated to pay Baptiste's out-of-pocket expenses, per diems, and administrative time related to the project.[46] Baptiste requests that the Court grant his motion and order mediation or another settlement conference.[47]

### B.   TJ Sutton's Arguments in Opposition to the Motion

In opposition, TJ Sutton argues that Baptiste's filings indicate that he did not contract with Citadel or TJ Sutton, so there is no contractual basis for an obligation to pay Baptiste.[48] TJ Sutton contends that there was never an agreement to pay Baptiste during a meeting, as any staffing agreement was made with Blue Water.[49] TJ Sutton avers that the agreement with Blue Water provides for payment of roofing work at an agreed rate based on square footage, not reimbursement of administrative services or any other work.[50]

TJ Sutton asserts that Baptiste's pleadings indicate that he entered into subcontracts with Total Restoration Services, which is not a party to this litigation, and Blue Water.[51] TJ Sutton

---

[44] *Id.* at 4.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 5.

[48] Rec. Doc. 108 at 1.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 2.

contends that Baptiste does not allege that he contracted with Citadel or TJ Sutton.[52] TJ Sutton argues that payment to Baptiste would potentially prejudice Blue Water's claim to the interpled funds.[53]

TJ Sutton asserts that Baptiste is an employee of Blue Water, and this evidences that he has no independent basis to payment directly from TJ Sutton.[54] TJ Sutton states that the payment terms are contained in the staffing agreement attached to the opposition.[55]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[57] All reasonable inferences are drawn in favor of the nonmoving party.[58] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[59] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

---

[52] *Id.*

[53] *Id.* at 4.

[54] *Id.* at 5.

[55] *Id.*

[56] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[57] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[58] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[59] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[60] The nonmoving party may not rest upon the pleadings.[61] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[62]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[63] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[64] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[65] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[66]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied

---

[60] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[61] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[62] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[63] *Celotex Corp.*, 477 U.S. at 323.

[64] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[65] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[66] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[67] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[68]

### **IV. Analysis**

Baptiste seeks summary judgment on the issue of liability. Baptiste contends that there was a verbal agreement with TJ Sutton wherein Thomas Sutton agreed to pay Baptiste's out-of-pocket expenses, per diems, and administrative time related to the project.[69] Baptiste attaches a sworn declaration signed by himself,[70] requests for admissions propounded on Citadel,[71] an email from Robert "Bob" Ellis, and a text message from "Troy Citadel Owner" in support of his argument.[72]

In opposition, TJ Sutton denies entering any verbal agreement directly with Baptiste.[73] TJ Sutton concedes that a meeting occurred, but the staffing agreement was with Blue Water.[74] TJ Sutton denies any agreement to reimburse Baptiste for administrative services or any other work.[75] TJ Sutton attaches a declaration from Thomas J. Sutton, and a Blue Water staffing agreement in support of its argument.[76]

---

[67] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[68] *Morris*, 144 F.3d at 380.

[69] Rec. Doc. 105.

[70] Rec. Doc. 105-5.

[71] Rec. Doc. 105-6.

[72] Rec. Doc. 105-7.

[73] Rec. Doc. 108 at 1.

[74] *Id.*

[75] *Id.*

[76] Rec. Doc. 108-1.

The Court finds that there are genuine issues of material fact in dispute as to whether a verbal agreement existed between Baptiste and TJ Sutton. Baptiste's self-serving declaration and the ambiguous emails and text messages attached to the motion are insufficient to support summary judgment. While the text messages and emails could lead to the conclusion that a meeting occurred, they do not demonstrate that TJ Sutton agreed to pay Baptiste for work related to the project.[77]

In opposition, TJ Sutton attaches a staffing agreement between Blue Water and TJ Sutton, which lists Baptiste as an assigned employee.[78] The staffing agreement states that the "Staffing Firm [Blue Water] will pay Assigned Employees' wages and provide them with the benefits as required per applicable laws and labor regulations."[79] This demonstrates that there are genuine issues of material fact in dispute as to whether TJ Sutton is the party responsible for paying Baptiste for the work on the project.

Baptiste also relies on unanswered requests for admissions that were propounded upon Citadel. Under Federal Rule of Civil Procedure 36(a), requests for admissions are deemed admitted if not answered within 30 days.[80] Any matter admitted under Federal Rule of Civil Procedure 36 is deemed conclusively established unless the court permits withdrawal of the admission.[81] Further, if the requests for admissions concern an essential issue, the failure to respond to requests

---

[77] *See* Rec. Doc. 105-7.

[78] Rec. Doc. 108-1.

[79] *Id.* at 3.

[80] *See Hulsey v. Texas,* 929 F.2d 168, 171 (5th Cir. 1991) ("Under Federal Rule of Civil Procedure 36(a), a matter in a request for admissions is admitted unless the party to whom the request is directed answers or objects to the matter within 30 days.").

[81] Fed. R. Civ. P. 36(b).

for admission can lead to a grant of summary judgment against the non-responding party.[82] While facts deemed admitted due to a failure to respond to requests for admission could support a grant of summary judgment, summary judgment is typically granted against the *non-responding party*. Here, Baptiste propounded requests for admission on Citadel, to which Citadel failed to respond. This cannot be used as a basis for summary judgment against TJ Sutton.

Baptiste asked Citadel to admit that two of its employees heard Thomas Sutton verbally agree to pay Baptiste.[83] Even if the admissions could be used against TJ Sutton, the admissions by Citadel contradict the written staffing agreement and the declaration of Thomas Sutton that he did not verbally agree to pay Baptiste. Therefore, genuine issues of material fact remain in dispute regarding whether TJ Sutton is liable to Baptiste.

Finally, Baptiste requests that the Court order mediation or another settlement conference. The Scheduling Order instructs the parties to contact the Magistrate Judge six weeks before the pretrial conference date to schedule a settlement conference. The parties are free to schedule a mediation as soon as the Magistrate Judge is available. Accordingly, no further order is necessary.

---

[82] *Dukes v. South Carolina Ins. Co.,* 770 F.2d 545, 548–49 (5th Cir.1985).

[83] Rec. Doc. 105-5.

## V. Conclusion

For the reasons stated herein, genuine issues of material fact remain in dispute regarding whether TJ Sutton is liable to Baptiste. As such, the Court must deny summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Baptiste's Motion for Partial Summary Judgment is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___11th___ day of July, 2024.

                              *Nannette Jolivette Brown*
                              **NANNETTE JOLIVETTE BROWN**
                              **CHIEF JUDGE**
                              **UNITED STATES DISTRICT COURT**